Justice LEE,
concurring in part and concurring in the judgment:
121 I concur in paragraphs 1 through 11 of the majority opinion, and also in the judgment affirming the district court's summary dismissal of the complaint in this case. I write separately, however, because I disagree with the analysis in the balance of the court's opinion, which strikes me as internally inconsistent and potentially confusing.
1 22 Summum asserts a right under article I, section 4 of the Utah Constitution to have its "Seven Aphorisms" monument displayed in Pleasant Grove City's Pioneer Park. Because that park already includes a Ten Commandments monument that Summum views as an item of "religious worship, exercise or instruction" under article I, section 4, Sum-mum asserts a right to add its own parallel *1194 item to the City's monuments in Pioneer Park. And in support of this claim Summum invokes the neutrality test set forth in Society of Separationists, Inc. v. Whitehead, 870 P.2d 916 (Utah 1993).
{23 I agree with the majority that this claim fails on the threshold ground that "an injunction requiring Pleasant Grove to display the Seven Aphorisms monument would not satisfy the neutrality requirement articulated in Society of Separationists," in that "a second religious monument would not render the allocation of public property and money to the two monuments neutral." Supra ¶ 11. Given that "[the citizens of Pleasant Grove, and Utah in general, undoubtedly espouse a broad variety of religious views, including adherence to one of multiple religious denominations, agnosticism, or atheism," there is no basis for concluding that a mere two monuments (Ten Commagdments and Seven Aphorisms) would render "neutral" the government's use of public money or property. Supra ¶ 11.
24 That is all we need to say to decide this case. We need not, and in my view we should not, proffer a view on the "second" ground articulated by the majority for its holding-that "the neutrality test we adopted in the context of prayers offered during governmental meetings" could never be applied in a manner upholding religiously oriented "public monuments." Supra ¶ 12. The applicability of the Society of Separationists neutrality test is not one we need to reach because Summum's claim fails on the threshold ground that it has sought a remedy that is unavailable to it. And the majority's analysis on this point is internally inconsistent and potentially confusing.
1 25 The internal inconsistency is in (a) the opinion's assertion (in Part I) that the Society of Separationists neutrality test "does not apply to public monuments," supra ¶ 12; and (b) the concession (in Part II) that a religious monument could be upheld if in context it would not be perceived as "religious worship, exercise, or instruction," supra ¶¶ 18-21. I agree with the latter concession, as there is good reason to expect that a monument could satisfy constitutional serutiny under Society of Separationists if it were placed in a neutral setting alongside a wide array of other monuments.[1] But the court's ultimate concession in Part II undereuts the earlier conclusion in Part I.
126 That gives rise to the potential for confusion in the court's opinion as written. In light of the ultimate concession (in Part II) that the Society of Separationists test could apply in a manner upholding the use of government funds on a religious monument, the majority's assertions about the inapplicability of the test (in Part I) could mislead litigants and judges in future cases. If read out of context and taken at face value, the court's general statements that Society of Separationists "does not apply to monuments" have a significant potential to confuse. See Supra ¶ 12.
T 27 The majority's response to this problem is the assertion that the discussion in Part I of its opinion concerns only the "see-ond step" of the Society of Sepurationists test (whether the government expenditures in question are "neutral"), and the insistence that the "holding" that that "step" of the test "does not apply to monuments has no bearing on the question of how courts should determine what the message conveyed by a challenged monument is." Supra 120. But that explanation does not solve the problem; it simply highlights the fact that the court's proffered "second" basis for its holding-that the Society of Separationists test "does not apply to public monuments," supra ¶ 12-is not in fact a separate ground for the court's holding. Step two of the Society of Separa-tionists test has no independent significance. If a religiously oriented monument would not qualify as "religious worship, exercise or in--struction" as viewed in its real-world context (step one), then it matters not at all whether the government expenditures at issue are neutral (step two).
*1195 128 For that reason, the majority's concession that a Ten Commandments monument could withstand constitutional serutiny only underscores the fact that the court is not really proffering a second basis for our holding in this case. We are not "hold[ing] that the neutrality test we adopted in the context of prayers offered during government meetings does not apply to public monuments," supra 112, because we are ultimately concluding that such test could apply. And in light of that, there is no "second" basis for rejecting Summum's claim in this case (as of course the fact that the Society of Seporationists test might falter at the second step of the analysis is irrelevant if the test would be rendered irrelevant at the first step).
{29 Ultimately, and in any event, the majority's views on the inapplicability of the Society of Separationists test to cases involving Ten Commandments monuments are not logically a basis for rejecting Summum's claim in this case. Such views may provide guidance for lawyers and litigants in future cases, but they do not establish a ground for rejecting Summum's claim in this case.
130 Society of Separationists establishes an exception to the general rule. The general rule is that public money or property shall be appropriated for or applied to any religious worship, exercise or instruction." Urax Const. art. I, § 4. Taken literally and to its logical extreme, that could be understood to foreclose any use of public funds that would even incidentally benefit religious worship. Yet Society of Separationists recognized a limitation on the literal application of article I, section 4. Soc'y of Separationists, Inc., 870 P.2d at 982-34 (rejecting the "absolutist position" advanced by Society of Sepa-rationists). It held that "article I, section 4 does not require ... hostility toward religion," but instead allows public money or property to support religious worship or exercise if it is "provided on a nondiscriminatory basis" and "the public money or property [is] equally accessible to all." Id. at 938.
11 31 A conclusion that this neutrality analysis is inapplicable would not be a basis for dismissing a plaintiff's claim under article I, section 4. To the extent the court is signaling its skepticism that the Society of Separation-ists test-or even part of it-is inapplicable, that represents a point in favor of a plaintiff under article I, section 4. That, ultimately, is what the court appears to be doing-identifying a point of analysis that may favor a plaintiff like Summum in a future case. Because that cannot be a second ground for dismissing Summum's claim in this case, I concur only in paragraphs 1-11 of the majority opinion and disagree with the rest.

. See McCreary Cnty., Ky. v. ACLU of Ky., 545 U.S. 844, 867-68, 874, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005) (concluding that constitutionality of Ten Commandments monument depends on context in which it is displayed); Thomas v. Daughters of Utah Pioneers, 114 Utah 108, 197 P.2d 477, 488-90 (1948) (holding that constitutionality of display of Mormon pioneer artifacts in state-funded museum would depend on context).